UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | | |
|---|---|---|
| DONALD GARDNER, | ) | Case No. CV 08-2809 (SH) |
| Plaintiff, | ) ) | MEMORANDUM DECISION AND ORDER |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

    This matter is before the Court for review of the Decision by the Commissioner of Social Security denying plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act.  Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned.  The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a joint stipulation.  After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

1

On June 8, 2005, plaintiff Donald Gardner filed an application for a period of disability or Disability Insurance Benefits, alleging an inability to work since March 30, 2002, due to asthma and pain in his feet caused by Ainhum disease.[1] (See Administrative Record ["AR"] 60-62, 83-90).  On June 15, 2007, subsequent to a hearing, an Administrative Law Judge ("ALJ"), who found that plaintiff had severe impairments (asthma, Ainhum disease), determined that plaintiff was not disabled within the meaning of the Social Security Act.  (AR 16-25).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (AR 5-7), plaintiff filed an action in this Court.

Plaintiff makes four challenges to the ALJ's 2007 Decision denying benefits. Plaintiff alleges that the ALJ erred in (1) failing to properly consider the medical evidence; (2) failing to properly evaluate plaintiff's credibility; (3) failing to properly consider lay witness testimony; and (4) failing to pose a complete hypothetical question to the vocational expert.

For the reasons discussed below, the Court finds that plaintiff's second claim of error does have merit. Since the matter is remanded based on plaintiff's second claim of error, the Court will not address plaintiff's first, third and fourth claims of error.

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ improperly found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (AR 23).  Plaintiff alleges that the ALJ failed to state which of plaintiff's statements were not credible and why such statements were not credible. Plaintiff further alleges that it appeared the ALJ failed to consider all of the evidence in

---

[1] Ainhum is "a condition of unknown origin, occurring chiefly in dark-skinned races in the tropics, in which linear constriction of a toe, especially the fifth one, leads to gradual spontaneous amputation." Dorland's Pocket Medical Dictionary, p. 22 (23rd ed. 1982); see also Administrative Record 116-44.

2

his determination about plaintiff's credibility. In response, defendant argues that the ALJ provided specific, clear and convincing reasons for his credibility finding.

The Commissioner's assessment of plaintiff's credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "If the ALJ's decision is based on a credibility assessment, there must be an explicit finding as to whether the plaintiff's testimony was believed or disbelieved and the testimony must not be entirely discounted simply because there was a lack of objective findings." Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). Furthermore, if the Commissioner chooses to disregard plaintiff's testimony, the Commissioner must set forth specific cogent reasons for disbelieving it. Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); Holohan v. Massanari, 246 F.3d 1195 (9th Cir. 2001). Once the plaintiff produces objective medical evidence of an underlying impairment, the ALJ may still reject the plaintiff's excess pain testimony, but only by setting forth clear and convincing reasons for doing so. Light v. Social Sec. Admin., 119 F.3d 780, 792 (9th Cir. 1997); Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). In evaluating a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies within the claimant's testimony or as between his testimony and conduct, the claimant's daily activities, work history, as well as testimony from physicians or third parties concerning the nature, severity, and effect on the symptoms of which the claimant complains. Light, supra; see also Reddick, supra (although disability claimants should not be penalized for trying to lead normal lives despite their limitations, when the level of their activities are inconsistent with their claimed limitations, those activities have a bearing on the claimants' credibility).

At the administrative hearing, plaintiff testified that he has problems with his asthma when he is exposed to dust or fumes. (See AR 416). Plaintiff further testified that in 2003 or 2004 he had to have his left baby toe amputated after a couple of years of

severe pain,[2] that he was developing bunions under that toe, that he was experiencing pain with the next two left toes and the right three smallest toes, that he could stand or walk for only about 30 minutes (and then he needed to get off his feet for a couple of hours), and that pain medication (Naprosyn and Vicodin) only provided temporary relief. (See AR 416-20).

In his Decision, the ALJ found that plaintiff's asthma and Ainhum disease "could reasonably be expected to produce the alleged symptoms[.]" (AR 23). Nonetheless, the ALJ found that the "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Id.).

As plaintiff points out, it is not entirely clear on what bases the ALJ made the determination about plaintiff's credibility as to his foot condition.[3]

The ALJ's credibility finding as to plaintiff's foot condition appeared to rely on the following: (1) plaintiff's testimony at the hearing that "[h]is pain sometimes improves enough to the point that he only needs non-prescription pain relief" (AR 23); (2) the notation during the application interview that plaintiff had no difficulties moving about (Id.); (3) the State Agency consultant's opinion that plaintiff did not have a need for a cane (Id.); (4) the fact that plaintiff "has shoe inserts to address his amputated toe, foot pain and abnormal gait" (Id.); (5) plaintiff's treating podiatrist's statements that plaintiff has successfully healed from toe amputation and that his pain is controlled (Id.); and (6) plaintiff's statements that he can lift 50 pounds, do his own grocery shopping, clean the house, change the battery, wash his car and do yard work (Id.).

Contrary to the ALJ's statement, plaintiff did not testify that he sometimes takes non-prescription pain medication. Rather, plaintiff testified that he takes Naprosyn for

---

[2] The surgery was actually performed on May 6, 2004. (See AR 278, 294).

[3] Since the Court is remanding the matter based on ALJ's failure to provide clear and convincing reasons for finding plaintiff not credible with respect to his foot condition, the Court will not address the ALJ's credibility determination with respect to plaintiff's asthma condition.

mild pain and Vicodin for more severe pain. (AR 420). It was not clear that plaintiff was taking Naprosyn as a non-prescription pain medication. There was no indication as to the extent to which plaintiff suffered mild pain as opposed to severe pain. The fact that plaintiff may have suffered only mild pain for an unknown time period simply does not support the ALJ's credibility determination.

Although the ALJ correctly noted that the application interviewer did not observe plaintiff having any difficulties with activities such as sitting, standing and walking (see AR 23, citing AR 78), the ALJ failed to note that the interviewer observed that plaintiff had a "very slight limp." (See AR 78-79). That interview took place on June 8, 2005 (see AR 79), more than three years after plaintiff's alleged onset date. Moreover, there is no indication that the interviewer observed plaintiff after plaintiff had been on his feet for about 30 minutes (according to plaintiff, he can stand or walk for about 30 minutes before he is limited by his foot problems, see AR 419). Thus, the interviewer's observations of plaintiff did not provide a clear and convincing reason for the ALJ's rejection of plaintiff's testimony.

The ALJ relied on a statement by a consultative examiner (who happened to be an allergist and immunologist) in a July 13, 2005 evaluative report that plaintiff "can walk without any assistive devices." (AR 23, citing AR 145-47). However, the ALJ failed to state why the absence of a cane (or any other assistive device) made plaintiff less credible. Again, there is no indication that the consultative examiner observed plaintiff after plaintiff had been on his feet for about 30 minutes.

With regard to the ALJ's reliance on the fact that plaintiff "has shoe inserts to address his amputated toe, foot pain and abnormal gait" (AR 23, citing AR 234, 315, 317-18), none of the medical records cited by the ALJ state that the shoe inserts successfully reduced or eliminated plaintiff's pain. Indeed, plaintiff testified that he was not able to wear a pair of shoes which were fitted to conform to his feet because of pain at the bottom of his feet. (AR 417). In addition, according to a January 24, 2007 progress note,

5

plaintiff was not able to wear shoes even after he had been given "superfeet orthotics," and plaintiff apparently required additional orthotics. (<u>See</u> AR 325-26). Thus, plaintiff's testimony and the medical evidence contradict the ALJ's credibility finding.

The ALJ improperly relied on plaintiff's treating podiatrist's December 7, 2005 report that states that plaintiff "has healed successfully" from the amputation of the fifth digit of the left foot and that plaintiff's pain "is controlled with Lidoderm patches which numb the area and increases [sic] the circulation." (<u>See</u> AR 23, <u>citing</u> AR 295). The ALJ failed to note that the same report contains statements -- namely, "the 5th digits on both feet were severely painful due to lack of circulation to the toes," and "The toes will eventually auto-amputate with time but due to the severity of the pain the patient opted for amputation of the 5th digit of the left foot" (AR 295) -- which support plaintiff's pain testimony. Moreover, it is not clear what the podiatrist meant when he stated that plaintiff's pain is "controlled." The podiatrist's statements are somewhat suspect because there is no indication that podiatrist treated plaintiff after late 2004 (at the time of the last visit, it was noted that plaintiff had nerve pain in his left foot and continued to have pain in his right fifth toe, and plaintiff apparently was given Liboderm patches, <u>see</u> AR 277). Indeed, it appears that plaintiff sought treatment with another podiatrist beginning in July 2005. (<u>See</u> AR 227). Later treatment records, not addressed by the ALJ, indicate that plaintiff experienced problems with pain in the toes of his left and right feet. (<u>See</u> AR 318, 343).

Finally, the ALJ improperly found that plaintiff's statements that he can lift 50 pounds, do his own grocery shopping, clean the house, change the battery, wash his car and do yard work "are inconsistent with complaints of disabling pain" (AR 23, <u>citing</u> AR 92). In a questionnaire dated June 17, 2005, plaintiff stated that he was able to lift 50 pounds, clean the house, change the battery, wash his car, and do yard work. (AR 92). However, plaintiff did not indicate (and there is no indication in the record about) how often he can lift 50 pounds. Moreover, the ALJ failed to consider several of plaintiff's

responses. When asked what kind of things he can carry, plaintiff stated "Not much." (Id.). Plaintiff stated that his ability to drive a car "depends on pain from feet." (Id.) Plaintiff stated that he could work on the car "Not long" and that he could do yard work for one hour. (Id.). Plaintiff stated that he had difficulty finishing his housework and other chores because of "pain in feet." (AR 93). Plaintiff stated that he was required to take rest periods or naps during the day. (Id.; see also AR 420-21). The ALJ's reliance on selective statements about plaintiff's daily activities was an insufficient basis for discrediting plaintiff. See Fair v. Bowen, 885 F.2d 597, 561 (9th Cir. 1989)("The Social Security Act does not require that claimants be utter incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

Accordingly, the ALJ did not provide clear and convincing reasons for the determination about plaintiff's credibility determination with respect to his foot condition.

## ORDER

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED: July 31, 2009

                                                  /s/
                                        STEPHEN J. HILLMAN
                          UNITED STATES MAGISTRATE JUDGE